Mr. James, good morning. I do want to indicate that Justice Bowman is the third member of our panel. He was unable to be here today, but he will review the tape of the arguments before we render any decision in the case. This is also an unusual case. It's the first time I've ever taken part of an argument where you're going to be arguing with yourself. But... To a great extent, I'm arguing against the trial court. So we will hear your argument. Of course, there's no need for rebuttal. So once we get done with your argument, we'll be done for the day. That'll work. Thank you, Your Honor. Mr. James, you may proceed. Thank you. May it please the Court and the opposing counsel, I'm Tom James. I am the contender, and I represent John Earlywine in the trial court. In this case, what is proposed to this Court is whether 501 paren c-1 subparagraph 3 states a public policy exception to what is known as the advanced payment retainer methodology of Dowling and what is now RPC 1.15. In the trial court, both opposing counsel and his client and the court accepted that I was retained under the advanced payment retainer methodology. That's not a contested fact. That is a fact. And you can find a complete contract in the record and the operative terms are in the appendix with regard to that. Dowling resolved the public policy recognition of advanced payment retainers. The issue is not before the Court of whether that's going to be recognized. The Supreme Court already did that. What this Court's looking at is whether the parity provision of the leveling the playing field rules, which is under 501, is a public policy exception. But Dowling did say that these retainers are to be used sparingly and only when necessary to accomplish some specific purpose. That's correct, Your Honor. So, I mean, it's the specific purpose. If someone was sitting there, they'd be arguing that the specific purpose is to avoid the leveling the playing field. No, it isn't so much to avoid the leveling the playing field because you can make that parity argument in every debtor-creditor relationship. You can make it in every civil forfeiture relationship. In fact, I can make a real strong argument on the civil forfeiture issue because a thief can take no title and neither can a criminal enterprise for purposes of what they've received. Therefore, if they go in under an advance payment retainer, they are able to use what would be the unlawful objectives of which that enterprise is actually created. Those issues were actually considered by the Illinois Supreme Court. They said, we realize there can be abuse in these cases, but the fact of the matter is and Dowling, Dowling apparently wasn't abusive. They only transferred $150,000 after the entry of a $800-and-some-odd-thousand-dollar judgment that came up in the citation proceeding. That was not abusive. In this case... How would Manhattan do talk about this judgment creditor? I realize that Dowling had that, what I would consider dictated about criminal cases. But I don't know that they looked at it to the full extent that you just outlined where a criminal could steal money and then give it to his or her attorney and then shield that from restitution. But they actually did refer to that. I know they referred to it in one sentence, but they never really expanded on the analysis at all. But the purpose of that, and I would point out when they adopted RPC 1.15, the amended version, they put that in the provisions to protect the client's interest. There's a variety of places in the RPCs they could have placed these provisions. They put it in protecting the client's funds. And the purpose of placing these funds into the advance payment retainer is to ensure that counsel is retained. Otherwise, you would have a defendant that would never ever be able to get their counsel. And what is the problem with that? They're not represented equally before the court. That's the problem. Now, I realize in saying that, you can come back and say, well, isn't that the issue of the parity as well? Here's the problem. 501C-1 paragraph 3 is subject to subparagraph 4. Subparagraph 4 specifically refers to 508. It's quicker, actually, for me to state it. The changes to this Section 501 made by this Amendatory Act of 1986 apply to cases pending after June 1, 1997, except as otherwise provided in Section 508. 508F, and in particular 508 sub 5 and 6, specifically defer to the RPCs. And they do that because they must, under Sperry, the sole authority to control or regulate the legal profession, sits with the Illinois Supreme Court. The General Assembly in determining public policy has existed under those leveling playing fields. They had to make that statement. They have to make that deferral. If they don't make that deferral, then they end up with a problem between the branches of government. It is solely within the court that the regulation of attorneys exists. In that context, dowling allowed for an advance payment retainer to protect the client. That's what exists in this case. And that's why, when the trial court looked at this case and made a public policy decision under subparagraph 3, it was incorrect. That decision had already been made by the General Assembly. The General Assembly has already deferred under 501 and 508 to the rules of professional conduct. As such, there is no parity exception as a matter of public policy. Can it be argued, specifically the rule RPC follows dowling, follows the language of dowling and dowling says to accomplish some purpose for the client. Can it be argued that this is really, in your case, accomplishing some purpose for the client's parents? Well, but for the parents, there would be no funding at all. And I would suggest to you that they have a right to rely on that, and in fact they did. That's what Joyce Erlingwein's affidavit was about. They were specifically relying upon the existence of the advance payment retainer. Dowling and the RPCs require that to be between the attorney and client. That doesn't refer to how it's funded, because in this case, my client doesn't have any funds. There isn't anything to fund. Your client has access to funds. And that's what the leveling the playing field talks about. And it actually has a provision of it where if the court finds nobody has any money, then you look at access to funds. And you can make that argument with the access to funds. You can say that, but dowling, that's the exact confrontation of dowling and the RPCs. That's why the advance payment retainer exists. It exists so that the client who becomes aware, as I am required to advise them, when they become aware and they're learning about how I can be retained, they have to be advised with regard to the advance payment retainer. It's their choice. The reason they have to be advised is that the effect of dowling, when you have these issues of cross-transfers of fees, dowling creates, causes, allows to happen a conflict of interest if you don't advise the client. And the reason it creates a conflict is Rule 1.7. The reason it creates a conflict is because if you don't tell the client, and then you take a general, or not a general retainer, but a security retainer, you're exposing that money to a claim. If you unknowingly expose a client's money to a claim, you have a problem under Rule 1.7. I think you might have an E&O problem, too. Now, why would anyone ever in a divorce case take a security retainer ever again? Well, first of all, I think it depends on the facts of the case and who you're advising. I mean, the disparities among clients and the facts can be myriad. For example, let's say, without naming a name, my client is someone of great wealth. I'm going to go through and I'm going to provide and inform them about the difference between security retainers and advanced payment retainers. If they're worth several million dollars or tens of millions of dollars, they may want to keep the control over me. And that happens with a security retainer. They may be advised and they'll look at it and go, why would I care? Why would I care if I have to advance $5 million to the other side? I'm going to get hit with it anyway. I want to control my attorney and I'll pay the bill when I say it's right. You can have a retainer, but you're going to give me notice and we're going to go over the bill. I would say that there are wealthy individuals that would retain that kind of control. Yeah, if they're wealthy enough where they don't really care about paying the other side. But we're talking about the vast majority of cases where people don't want to pay the other side. Certainly, attorneys do not want to disgorge money that they've received already to pay the other attorney. In those cases, I just don't know why anybody would take a security retainer as opposed to an advanced payment retainer, especially when, under the specific terms of an advanced payment retainer, if you don't earn any of that money, you have to give it back to the client. I would suggest something. It's not in the law. But what you're telling me is that maybe the rules should be different depending on the size of the divorce. That's how they do it in bankruptcy. You've got Chapter 11, you've got Chapter 13, you've got Chapter 7. We don't do that in divorce work. Should we? Yeah, we should, but we don't. So the fact of the matter is, I have one set of rules. And they set forth those rules, and in 07, the Dowling decision came out, and those, frankly, from my standpoint, because I represent a lot of obligors, from my standpoint, that simplified how I practice. I could lay this out. The only other way for, if you represent obligors, the only other methodology was to take no retainer, have the bill, and then you would make an argument that it's an earned fee. There's an argument, and there's case law that says, an earned fee, once it transfers, becomes the property of the attorney, and that's not part of the marital estate either. Once 08 and 09 hit, those receivables, they're dust. So the only way you can actually deal with some of these things is to lay this out. Dowling allows for it, but ultimately, and as I say conclude, I conclude when the court's done questioning me, but the bottom line is that Dowling allows for this, and IDMA, under the leveling the playing field rules, defers to both the rules of professional conduct and Dowling, as it must. And that's because of Sperry, and that's because the ultimate authority to regulate the practice rests in the Illinois Supreme Court, and they made these rules, and they issued Dowling. As such, it's my position that there is no public policy exception under the parity provision of 501C-1, sub 3. But what you're saying is that we can't even consider public policy because that's already been set by the Supreme Court. It's been set by the General Assembly and the Supreme Court. Both. That's public court. So basically what you're saying is that the language in the Act is nullified by Dowling. No, because the General Assembly in C, sub 4, specifically defers to 508. And 508 defers to the Illinois Supreme Court. They've already made that decision. That's a matter of the General Assembly's public policy. They put it in law. That's how it transfers through. And what I'm suggesting is they, the General Assembly, had no choice in any event. They must have deferred to the Illinois Supreme Court because the rules of practice are solely under the authority of the Illinois Supreme Court in rules of professional conduct. And that's where this device, the advance payment retainer, that's where its authority arises from. And as such, it cannot be overcome by a public policy argument that I can't find any case law for. I haven't found one case that supports that public policy position. I understand that's the trial court's ruling, but I don't have any cases. And I have everything that I've briefed that sets against it. You mean that supports the public policy decision of applying to these retainers? Just specifically? I'm saying that... Or just leveling the playing field? When I was arguing in front of Judge Erson, when she says that, in her decision, what she says is there must be a public policy exception for what is C-1 sub 3, I can't find any case law that agrees with that. But more importantly, and this kind of goes back, and this is why I cite the Feinberg in my brief, Feinberg says public policy is not to be determined by the court. It is to be determined from the long-standing, from the General Assembly, the Constitution, and the long-standing decisions of the court. In our jurisprudence, the ultimate decision maker for case law is the Illinois Supreme Court, at least as to Illinois public policy that arises from dealing with the cases. Otherwise, it's the General Assembly. And in this particular case, both the General Assembly and the Illinois Supreme Court recognize the advance payment retainer device and that it's not subject to turnover orders. Anything else, Counselor? No, thank you. Thank you for your argument. Very interesting issue. Apparently there's no case law. Correct? Hanifin came down. That was like the first or second case after Dowling. There's nothing on the divorce agreement. I looked it up again this morning. There's something out of federal court, but it didn't deal with anything. Thank you, Counselor. Thank you. The case will be taken under advisement with the decision rendered in due course. Thank you.